IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CICELIA REESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-061 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Cicelia Reese appeals the decision of the Acting Commissioner of Social Security

denying her application for Supplemental Security Income ("SSI") under the Social Security

Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the

relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the

Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final

judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff protectively applied for SSI on February 13, 2012, alleging a disability onset

date of January 5, 2010. Tr. ("R."), pp. 11, 119-24. Plaintiff had previously applied

unsuccessfully for Disability Insurance Benefits and SSI in 2008. R. 68-75, 174. Plaintiff

subsequently amended her onset date for the application currently under review to February 13,

2012. R. 11, 148. Plaintiff was fifty-three years old at her amended alleged disability onset date

and was fifty-five years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration.

Plaintiff applied for benefits based on allegations of asthma, arthritis, sleep apnea, diabetes, high blood pressure, kidney problems, problems with her right foot due to an in-grown toe nail, acid reflux, and allergies. R. 178. Plaintiff completed ninth grade and never attempted to obtain a GED. R. 46, 179. Prior to her alleged disability, Plaintiff had accrued a relevant work history as a housekeeper and laundry worker in nursing homes. R. 31, 33-34, 162, 188. In the rejected disability application from 2008, Plaintiff reported she had stopped working on June 30, 2008, because she had been laid off, (R. 155), but in the current rejected disability application, Plaintiff reported she had stopped working on June 1, 2004, "[b]ecause of [her] condition(s)." R. 178.

The Social Security Administration denied Plaintiff's application initially, R. 78-81, and on reconsideration, R. 83-84. Plaintiff requested a hearing before an ALJ, R. 85-87, and the ALJ held a hearing on July 12, 2013. R. 26-54. At the hearing, the ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from Otis Pearson, a Vocational Expert. Id. On August 30, 2013, the ALJ issued an unfavorable decision. R. 8-25.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1.    The claimant has not engaged in substantial gainful activity since February 13, 2012, the application date (20 C.F.R. § 416.971 *et seq.*).

2.    The claimant has the following severe impairments: degenerative disc disease in the lumbar spine, morbid obesity, diabetes mellitus, and hypertension (20 C.F.R. § 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c). The claimant is capable of performing past relevant work as a laundry worker, DOT Number 361.684-014, medium, SVP 2 and housekeeper, DOT Number 323.687-014, light, SVP 2. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. § 416.965).

5. In the alternative, considering the claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform (20 C.F.R. §§ 416.969, and 416.969(a)). Based on an RFC for the full range of medium work, the Medical-Vocational Guidelines direct a finding of "not disabled" under Rule 203.18. Therefore, the claimant was not under a disability, as defined in the Social Security Act, since February 13, 2012, the date the application was filed (20 C.F.R. § 416.920(f)).

R. 13-20.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to consider Plaintiff's severe impairments in combination; and (2) erroneously determined Plaintiff has an RFC for medium work because the medical opinions and Plaintiff's credibility were not properly evaluated. See doc. no. 10 ("Pl.'s Br.") & doc. no. 12 ("Pl.'s Reply"). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 11 (Comm'r's Br.").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether

the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply

correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.     DISCUSSION

Plaintiff argues the ALJ failed to consider all of Plaintiff's severe impairments in combination, and in particular her obesity, when determining Plaintiff has an RFC for medium work. See Pl.'s Br. & Pl.'s Reply. Plaintiff also contends the ALJ did not properly weigh medical evidence, which in turn caused the ALJ to improperly weigh Plaintiff's credibility. As explained below, the ALJ did not err in her evaluation of the medical evidence or Plaintiff's credibility, and she thoroughly explained her rationale for determining Plaintiff has an RFC for medium work. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A.     Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that

impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R § 416.967. Here, the ALJ determined Plaintiff has the ability to perform the full range of medium work. "Medium work" is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work . . . he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

In determining at step four in the sequential process whether Plaintiff's RFC for a medium work would allow her to perform past relevant work, the ALJ consulted the VE in accordance with 20 C.F.R. § 416.960(b)(2), which provides as follows: "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." The VE identified Plaintiff's past work as a laundry worker as unskilled, medium work, and her past work in housekeeping as unskilled, light work. R. 53-54.

**B.    The ALJ Considered All Severe Impairments in Combination.**

An ALJ must consider all of a claimant's impairments, severe and non-severe, in combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010). Here, the record reflects the ALJ did just that. Although an ALJ's simple statement that she has considered a claimant's impairments in combination may suffice, id., here, the ALJ's opinion reflects that she discussed Plaintiff's testimony and medical history related to her multiple impairments, which included Plaintiff's subjective allegations. The ALJ also stated multiple times she had considered "the entire record," "the medical record as a whole," the "overall" medical evidence, the severe impairments "singularly or working in combination," and "the totality of the medical evidence." R. 13, 16, 18. Relying on the VE to identify and categorize Plaintiff's past work, she then determined that because Plaintiff could perform a full range of medium work, and her past job as a laundry worker was performed at the medium level, she could return her past relevant work. R. 19, 53-54. Moreover, as a person capable of medium work, by definition, Plaintiff is capable of light work. See 20 C.F.R. § 416.967(c). The second job identified by the VE as Plaintiff's past relevant work was housekeeping, performed at the light level. R. 19, 53-54. Thus, even if, as Plaintiff now argues, she cannot perform medium work, she offers no valid argument as to why she cannot perform her past light work.[1] In any event, as detailed herein, the ALJ's conclusion is supported by substantial evidence, and Plaintiff's arguments for reversal or remand are without merit.

_____

[1]Plaintiff argues for the first time in her reply brief the ALJ relied on "faulty" testimony from the VE that she could perform her past relevant work as a housekeeper, which is light work under DOT 323.687-014. Pl.'s Reply, p. 4. According to Plaintiff, the housekeeping work as Plaintiff described it was medium work under DOT 323.687-010, not light work. This argument fails for two reasons. First, counsel never raised a problem at the hearing with the VE's categorization of her prior housekeeping work as light work. R. 53-54. Second, even if the

As to Plaintiff's more specific argument that the ALJ failed to properly assess her morbid obesity in combination with her other severe impairments, that likewise fails. After identifying Plaintiff's morbid obesity as a severe impairment, the ALJ went on to analyze that impairment as part and parcel of a comprehensive review of the medical evidence and Plaintiff's subjective complaints. As explained in Social Security Ruling ("SSR") 02-1p, obesity is no longer a listed impairment, but it is still a medically determinable impairment to be considered when evaluating disability. SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). SSR 02-1p also recognizes, "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body system." Id. at *3. An ALJ should assess the effect that obesity has on exertional and postural functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. at *6.

However, a mere diagnosis of obesity does not equate with a finding of disability. That is, disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Lewis v. Comm'r Soc. Sec., 487 F. App'x 481, 483 (11th Cir. 2012); Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005); 20 C.F.R. § 416.920(e)-(f). Rather,

_____

Court were to consider this belated argument, there is no merit to it because a VE's testimony "trumps" the DOT. Leigh v. Comm'r of Soc. Sec., 496 F. App'x 973, 975 (11th Cir. 2012) (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999)).

the record must contain evidence demonstrating that Plaintiff's obesity affected her ability to perform her past relevant work.

In discussing Plaintiff's obesity, the ALJ reviewed the medical record and determined it had caused no significant hospitalizations or outpatient services. Indeed, demonstrative of the ALJ's consideration of obesity in combination with her other impairments, the obesity evaluation occurred right after a discussion of Plaintiff's minimal degenerative disc disease and right before a discussion of her well-controlled diabetes and hypertension. R. 17. Additionally, although the ALJ noted Plaintiff was non-compliant with instructions to lose weight, the ALJ also observed Plaintiff's weight does not interfere with her ability to perform activities of daily living. R. 17. Plaintiff testified she could perform many activities of daily living such as cooking, sweeping the floor, doing laundry, and visiting with friends both at her home and theirs. R. 17, 48, 51, 207-14. Plaintiff further testified she could care for her personal needs with only occasional help from her fifteen-year-old daughter. R. 17, 47. She also goes grocery shopping for her family and sings in the church choir. R. 17, 48-49.

Plaintiff's assignment of error in failing to mention specifically SSR 02-1p in the administrative opinion is a red herring because the ALJ considered the record evidence in accordance with the regulation, regardless of whether she cited the regulation number. Likewise, Plaintiff's argument the ALJ failed to "discuss notations regarding Plaintiff's diagnoses of sleep apnea, asthma, and COPD" misses the mark because the ALJ did discuss the sleep apnea, (R. 14), and asthma, (R. 15). Plaintiff's string of record citations in support of the "notations" concerning these impairments does not help her because, as described

above, a diagnosis alone does not establish disability and must otherwise be accompanied by evidence of functional limitations preventing work. See Moore, 405 F.3d at 1213 n.6.

Moreover, the string of record citations is of little help because of their often innocuous nature. For example, a citation regarding COPD predates Plaintiff's onset date for this application by four years and indicates the condition was "fine," with a follow-up notation for a prescription. Pl.'s Br., p. 11 (citing R. 239). Similarly, the citation to a list of medications is of little help because Plaintiff testified she does not have side effects from any of the medication she takes, (R. 43), and the ALJ acknowledged Plaintiff's use of medication resulted in good control of her multiple severe impairments. R. 16.

In sum, the ALJ's analysis of Plaintiff's severe impairments in combination, including her obesity, is supported by substantial evidence.

### C.    The ALJ Properly Weighed the Medical Opinions.

As part of her argument that she is unable to perform medium work, and thus, her past relevant work, Plaintiff contends the ALJ improperly evaluated the medical opinions in the record, which also resulted in an improper assessment of her credibility. Plaintiff also faults the ALJ for not addressing Rule 201.01 and Rule 202.01 of the Medical-Vocational Guidelines ("the Grids") because a person of Plaintiff's age, education, and unskilled work experience would "grid out," that is, be found disabled by application of these Rules with an RFC for sedentary work (201.01) or light work (202.01). Of course the Grids argument is but a variation of the contention that Plaintiff does not have an RFC for medium work and cannot perform her past relevant work. As discussed herein, the ALJ's evaluation of the medical opinions and Plaintiff's credibility is supported by substantial evidence and thus, the analysis under the Rules proposed by Plaintiff was not required.

10

### 1.    Standard for Evaluating Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Sources that can provide evidence to establish an impairment

include licensed physicians, but not physician's assistants.  See Farnsworth v. Soc. Sec. Admin., -F. App'x-, No. 15-11059, 2016 WL 758738, at *6 (11th Cir. Feb. 26, 2016); 20 C.F.R. § 416.913(a)(1).

Additionally, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists.  See 20 C.F.R. § 416.927(c)(1)-(2), (5).  However, SSR 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review.  SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 416.927(d).

### 2. The ALJ Properly Attributed Minimal Weight to Vague Medical Opinions, Unsupported by Objective Medical Evidence.

Plaintiff claims the ALJ erred in discounting the medical opinions of three of her treating physicians, Praharsha R. Menon, M.D., William Paneral, P.A., and Firoz Patka, M.D., all presumably colleagues at Thomson Pediatrics and Internal Medicine.[2]  Of course, as evident by the listed titles, all three are not physicians. Moreover, Plaintiff's argument is supported only by generalized references to the entirety of the medical record without specific

---

[2]All three names appear at the top of a letter written on Plaintiff's behalf on March 27, 2012.  R. 363.

comparison to the ALJ's opinion as delivered, which includes analysis of other medical opinions and evidence which contradict the vague, three-sentence letters periodically written by a physician's assistant to excuse Plaintiff from performing "work involving significant physical activity."

### a.  P.A. Paneral Is Not an Acceptable Medical Source.

Plaintiff faults the ALJ for discounting as "too vague" the opinions of her treating physicians who wrote "periodic letters to the housing authority to excuse her from the required physical labor of able residents."  Pl.'s Br., p. 13 (citing R. 342, 363, 378, 39[5]).  Plaintiff asserts these opinions are supported by the evidence and not contradicted by other substantial evidence.  Id. at 14.  The Court disagrees.

Three of the four open letters are signed by Physician's Assistant William Paneral.  A physician's assistant is not an acceptable medical source who can establish a disabling impairment.  See Farnsworth, 2016 WL 758738, at *6; 20 C.F.R. § 416.913(a)(1).  Moreover, P.A. Paneral states in three perfunctory sentences that Plaintiff is "followed here for multiple medical problems, and is easily fatigued due to her conditions."  R. 342, 363, 395.  The medical problems are never identified, and there are no treatment records attached.  Likewise, in the fourth open letter, signed by Dr. Menon and written to an unidentified recipient to explain why Plaintiff "is unable to care for her grandson," there is simply a list of medical conditions without any attached records or explanation of functional limitations that may be caused by any condition.  R. 378.  The ALJ correctly identified P.A. Paneral's opinions in his non-descript letters as "too vague," R. 18, and as described in detail below, the entirety of the objective medical evidence reviewed by the ALJ does not support an opinion that Plaintiff is unable to perform all work.

The Court also rejects Plaintiff's contention the ALJ should have re-contacted the authors of these non-descript excuse letters for clarification of their meaning. Pl.'s Br., p. 14. The ALJ was not required to seek clarification from a non-acceptable medical source, or an acceptable medical source for that matter, of what it meant to be "medically excused" from work where, as here, there was sufficient information in the record for the ALJ to make an informed decision. See Ingram v. Comm'r Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007) (recognizing ALJ not required to seek additional medical information so long as record contains sufficient information to make an informed decision on a claimant's application).

> **b.** **In Assigning Weight to the Medical Opinions, the ALJ Conducted a Thorough Review of the Entirety of the Medical Record.**

The ALJ began her review of the medical evidence describing the results of a consultative examination by James L. Millen, M.D., which found Plaintiff had a long treatment history for diabetes mellitus, hypertension, asthma, and low back pain. R. 15 (citing R. 287-88). Although Plaintiff was obese, she in was in no apparent distress, and had a full range of motion in her lower extremities. Id. Plaintiff's medical history then showed successful treatment for kidney stones and diabetic feet in 2012. R. 15 (citing R. 372, 377.) Although treatment notes from Dr. Patka show Plaintiff was warned about her obesity, the notes also reflect she was doing well in 2013. R. 16 (citing R. 394.) An x-ray of her back ordered by Dr. Patka showed only minimal degenerative disc disease, and her treatment consisted primarily of regular prescription refills, with no use of physical therapy or alternative treatment. R. 16 (citing R. 392, 396.)

In a July 8, 2013 medical source statement from Dr. Menon, he opined Plaintiff could do no lifting whatsoever, R. 408, but the ALJ discounted this opinion, as well as those severely limiting Plaintiff's ability to sit, stand, and walk, as based on Plaintiff's subjective complaints and inconsistent with the minimal treatment evidence consisting primarily of medication management. R. 16, 18; see also Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) (affirming ALJ's discounting physician's opinion that claimant was disabled based on minimal treatment interaction, including "never order[ing] treatment beyond prescribing pain medication"). Dr. Menon also noted Plaintiff's use of a cane was not medically necessary, and she could shop and travel without a companion. R. 16 (citing Ex. 14F, R. 407-414.) In rejecting the medically unsupported opinions of Plaintiff's treating sources at Thomson Pediatrics, the ALJ also properly relied on the expert opinions of two state agency consultants who reviewed Plaintiff's records, (R. 18), one of whom determined Plaintiff had an RFC for a limited range of medium work, (R. 289-96), and one of whom who found Plaintiff did not even have any severe impairments, (R. 58-63). See SSR 96-6p.

Plaintiff would have the Court presume that her history of complaints about issues related to her various diagnoses related to pain, diabetes, and in-grown toenails automatically establishes she cannot perform her past relevant work as determined by the ALJ, but as described above, diagnosis alone is not enough. As the ALJ pointed out numerous times, all of Plaintiff's reported ailments were by and large successfully treated or managed with the use of medication, causing no reported side effects, or otherwise minimal treatment such as routine toenail debridement. R. 15-18. The Court cannot, as Plaintiff seemingly requests, re-weigh or apply a different interpretation to the record evidence than that applied by the Commissioner. Plaintiff bears the burden of demonstrating disability. Doughty v. Apfel, 245 F.3d 1274, 1279-

80 (11th Cir. 2001). Her select citations to various portions of the record which she believes could support a different interpretation of the evidence is not sufficient because the narrowly circumscribed nature of review does not involve re-weighing the evidence or substituting the judgment of the Court for that of the Commissioner. Moore, 405 F.3d at 1211, 1213.

In sum, the ALJ's weighing of the medical opinions is supported by substantial evidence.

### D.     The ALJ Properly Analyzed Plaintiff's Subjective Complaints.

In an argument that dovetails with her contention that the ALJ improperly rejected the opinions of her treating medical sources, Plaintiff also argues the ALJ erred in assessing her credibility as it relates to her subjective complaints. Pl.'s Br., pp. 11-13. As set forth in the ALJ's opinion, Plaintiff testified she was unable to work because of back and ankle pain. R. 14. Plaintiff further testified her back pain became worse with walking, she could only walk for one-half mile and stand for twenty-minutes, and she could not sit for very long. R. 14, 37-40.

### 1.     The Standard for Evaluating Subjective Complaints

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.

16

1995).  Under the applicable regulations, the ALJ must consider "all evidence, including

subjective statements about the intensity, persistence, and functionally limiting effects of pain [as

well as] the objective medical evidence, laboratory findings and statements from treating or

nontreating sources about how the symptoms affect the claimant in deciding the issue of

disability."  Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20

C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts."  Ryan

v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Moreover, this Court is required to uphold the

Commissioner's credibility determination if it is supported by substantial evidence.  Fortenberry

v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[3]  As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the
> implication must be obvious to the reviewing court.  The credibility determination
> does not need to cite particular phrases or formulations but it cannot merely be a
> broad rejection which is not enough to enable [the district court or this Court] to
> conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and

citations omitted).  As explained below, the ALJ properly conducted the Holt analysis and

reached the conclusion that Plaintiff's medically determinable impairments could possibly cause

the alleged symptoms, but her subjective complaints concerning the intensity, persistence, and

limiting effects of the symptoms were not entirely credible.

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the
Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed
down prior to October 1, 1981.

### 2. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff argues, "ALJ Wilson seems to hang her conclusion that Plaintiff is not fully credible on the fact that her x-ray, the only imaging she had at the time of the hearing, only showed minimal degenerative disc disease. (R. 16.)" Pl.'s Br., p. 12. She contends this statement is at odds with the ALJ's step two determination that Plaintiff's degenerative disc disease of the lumbar spine is a severe impairment, and she then proceeds to list her "long-standing clinical diagnoses." Id. at 12-13. The list of diagnoses fails Plaintiff yet again because, as the ALJ pointed out, "the medical record revealed no evidence of treatment other than the use of prescription medication with no use of physical therapy or alternative treatment."[4] R. 16. Minimal or no treatment for an alleged disabling condition may be validly considered by an ALJ in discrediting a claimant's subjective complaints. Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014); Gamble v. Colvin, No. 5:13-CV-01959-SLB, 2015 WL 2095064, at *6 (N.D. Ala. May 5, 2015).

The argument that the ALJ contradicts herself by identifying degenerative disc disease as a severe impairment at step two but discounting Plaintiff's subjective allegations about the condition also misses the mark. The severity test at step two of the sequential process is designed to screen out only groundless claims, Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014), and has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation

---

[4]As also noted by the ALJ in her credibility analysis, Plaintiff acknowledged some pain relief by using prescription medication and good control of her diabetes and hypertension with medication. R. 16, 38, 40, 43.

omitted). In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). Thus, a determination at step two of the sequential process that Plaintiff's degenerative disc disease is severe, a "slight abnormality" test, does not bind the ALJ to accepting all of Plaintiff's claimed limitations.

In addition, the ALJ carefully compared Plaintiff's subjective complaints to the objective evidence to determine whether Plaintiff's medical conditions could be expected to give rise to the level of limitations she claimed. For example, the ALJ noted Plaintiff's reported inability to sit for very long and an ability to stand for twenty minutes. R. 14. Yet Plaintiff also reported she could sweep, do laundry, cook, watch television, sing in the church choir, go grocery shopping, and visit with friends. R. 15. Indeed, despite testifying as to very severely limited abilities to sit and stand for any length of time, Plaintiff reported having no problem attending her daughter's school events, (R. 45-46), attending three hour church services, (R. 49), and spending most of her time "just sit[ting] and look[ing] at the TV," (R. 48). Plaintiff also self-reported regularly visiting with friends and relatives at their homes and sitting on the porch daily to read. R. 210-11. Plaintiff further allowed that she used her cane for ambulation only on certain days, depending on how she felt, but no doctor had prescribed use of the cane. R. 15, 52, 213.

In sum, the ALJ did not rely solely on one x-ray to discredit Plaintiff's subjective complaints, but instead relied on the record evidence in total in discrediting Plaintiff's subjective complaints. The ALJ pointed to Plaintiff's testimony and the objective evidence of record that did not show any treatment plans for functional limitations of the severity claimed by Plaintiff. Although Plaintiff may disagree with the conclusion reached by the ALJ, the credibility determination is supported by substantial evidence.

19

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 20th day of May, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA